UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SETH M. PFISTER,

    Plaintiff,

 v.                                                        Case No. 22-CV-876

C.O. BOLDUAN,
UNIT MANAGER SCHROEDER,
UNIT MANAGER GRENIER,
WARDEN MEISNER, DAN CROMWELL,
SECURITY DIRECTOR MCHUGH,
SECURITY DIRECTOR CONGDON,
CAPTAIN MASTRICOLA, and
ICE BEIER,

    Defendants.

---

### ORDER

---

Plaintiff Seth M. Pfister, who is currently confined at Redgranite Correctional Institution and is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. (ECF No. 1.) This order screens the complaint.

The court has jurisdiction to screen the complaint in light of Pfister's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

# SCREENING THE COMPLAINT

*Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the

United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*Pfister's Allegations*

Pfister, who identifies himself as a closeted gay person, alleges that some time in May or June 2021, defendant Unit Manager Schroeder intentionally moved from the E-unit housing unit to the F-unit housing unit. (ECF No. 1, ¶ 16.) Pfister states that the F-unit "is reserved for the trouble-makers, gang bangers, and aggressive inmates." (*Id.*) Pfister alleges that Schroeder hates gay people and intentionally moved him to a more dangerous housing unit for discriminatory purposes. (*Id.*) As evidence of Schreoder's intentions, Pfister asserts the following: while Schroeder was on vacation, Pfister asked other staff to be housed with another inmate who was openly gay. (*Id.*) When Schroeder returned from vacation, he became upset at Pfister's new housing assignment and moved him to F-unit.

Once on F-unit, Pfister states he was "harassed relentlessly," including being threatened, extorted for money, battered, and sexually assaulted. (*Id.*) In November 2021, defendant Unit Manager Grenier requested a meeting with Pfister because other inmates had informed her that Pfister was being bullied and extorted. (*Id.*, ¶ 17.) Pfister admits that he lied to Grenier and told her that that information was

3

false and that he felt safe. (*Id.*) Pfister lied because he "was just terrified of the consequences" from other inmates if he told Grenier the truth. (*Id.*) However, he alleges Grenier knew that he was being extorted because she denied him a disbursement of $250. (*Id.*)

Then after an incident in March 2022, Grenier once again interviewed Pfister. (*Id.*, ¶ 18.) During that meeting, she informed Pfister that she received information that Pfister was performing oral sex on another inmate. (*Id.*) Pfister insisted the allegations were false, but this prisoner, who Pfister states was his only friend, was moved off F-unit. (*Id.*)

Then on May 14, 2022, at approximately 10:15 p.m., Pfister was playing cards with a few other prisoners in the day room. (*Id.*) While playing cards at that time was technically against the rules, Pfister had gotten permission from an unidentified staff member. (*Id.*) Defendant C.O. Bolduan entered the day room and yelled at Pfister and the other prisoners for playing cards, not knowing that they had permission. (*Id.*) As she walked away, someone "called her a fat bitch." (*Id.*) Bolduan thought Pfister had said that, so she stated "Pfister! You gay fag! You're just mad because you miss cuddling with inmate Michael Labrec!" (*Id.*) Pfister states that Bolduan intentionally outed him that night. (*Id.*)

As a result of this incident, Pfister reported to staff at the Psychological Services Unit (PSU) that seeing Bolduan "caused his heart to beat fast, and made his mouth go dry, and made him feel warm all over." (*Id.*, ¶ 25.) Pfister also began seeking a psychiatrist, non-defendant Dr. Kydonieus. (*Id.*, ¶ 30.) Over the course of

4

the next several weeks, Pfister told Dr. Kydonieus that he was experiencing extreme mental and emotional distress and depression as a result of his encounter with Bolduan. (*Id.*, ¶¶ 30, 46.)

He also reported Bolduan's behavior to Grenier, who determined that instead of a Prison Rape Elimination Act (PREA) investigation, Pfister should use the inmate grievance system to address his concerns. (*Id.*, ¶ 26.) On May 25, 2022, Pfister filed a grievance about Bolduan's actions. Pfister also followed up on the status of his grievance with Warden Cromwell and with Institution Complaint Examiner Beier. (*Id.*, ¶¶ 29-33.) The complaint was dismissed on June 10, 2022, because there was already a "parallel" investigation. (*Id.*, ¶ 35.) It is unclear from the complaint what exactly the parallel investigation was.

Also on May 14, 2022, after the incident with Bolduan, another prisoner, Freddrick Pollard, approached Pfister, telling him that he didn't know Pfister was gay and asked to touch his buttocks. (*Id.*, ¶ 20.) Pfister "refused his advances and asked if he could please not talk to him like that." (*Id.*)

A few days later, Pollard approached Pfister again and pinched his buttocks. (*Id.*, ¶ 21.) When Pfister cried out and asked him what he was doing, Pollard responded, "You gonna give me some of that ass honkey or I'm going to snap your little fuckin' neck." (*Id.*) Pfister admits he was too afraid to notify staff of Pollard's threats.

Sometime after that encounter, Pollard approached Pfister while he was using the urinal and caressed his buttocks. (*Id.*, ¶ 22.) Then on June 3, 2022, while

5

Pfister was wiping down a toilet seat in a stall, Pollard cornered him, ordered him to pull his pants down, and inserted a finger into Pfister's anus. (*Id.*, ¶ 23.)

After this incident, on June 16, 2022, Pfister submitted a note to Grenier explaining what Pollard did to him. (*Id.*, ¶ 38.) Grenier interviewed Pfister that same day, and Pfister made a formal PREA report. (*Id.*) Pfister also asked Grenier to move him off of F-unit. (*Id.*, ¶ 36.) Grenier moved Pfister off F-unit on June 20, 2022, to G-unit, which is housing unit for at-risk prisoners such as transgender prisoners, gay prisoners, and weaker prisoners. (*Id.*, ¶ 42.) On June 22, 2022, Pfister wrote to Grenier thanking her for moving him to G-unit and that he felt much safer. (*Id.*, ¶ 47.)

Once Pfister moved to G-unit, several inmates from F-unit began harassing him by locking him out of his kiosk account. (*Id.*, ¶ 48.) Between the end of June 2022 and the beginning of July 2022, Pfister was locked out of his kiosk account at least 6 times. (*Id.*, ¶¶ 48-50.) Pfister learned from unidentified prisoners that some inmates on F-unit were locking him out of his account for "being a gay fag." (*Id.*, ¶ 48.) On June 30, 2022, these prisoners also used the kiosk to transfer $900 from Pfister's regular trust account to his media account, so he could not access funds to make phone calls or buy canteen items. (*Id.*, ¶ 49.) Pfister worked with non-defendant Captain McCrory to rectify his issues with his kiosk and trust account. (*Id.*, ¶¶ 55-58, 63.)

On July 10, 2022, Pfister met with non-defendant Lt. Rodensal about his PREA complaint. (*Id.*, ¶ 60.) Specifically, they wanted to discuss a phone call Pfister

6

had with a friend outside of prison, Savannah, where Pfister confided that he believed the same prisoners who were locking him out of his kiosk account put a "hit" on him. (*Id.*) Lt. Rodensal told Pfister that if he was lying about these allegations, they would "bury him". (*Id.*)

Also on July 10, 2022, Pfister encountered Bolduan in the dayroom. According to Pfister, Bolduan, "smiled and worded something that the plaintiff was unable to make out. But the reality is, from Plaintiff's point-of-view, Bolduan was clearly mocking him." (*Id.*, ¶ 62.) Then on July 11, 2022, Pfister's cellmate told him that he had a friend who spoke with Bolduan. (*Id.*, ¶ 65.) Bolduan told his friend that Pfister was "snitching" on her by filing a grievance against her, and said, "We don't need any snitches or fags over here on this side of the building. You guys should 'beat his ass.'" (*Id.*)

Generally, Pfister states that Bolduan violated his rights by outing him and encouraging other inmates to assault him. (*Id.*, ¶ 77.) He also asserts that Schroeder violated his rights by intentionally moving him to a dangerous housing unit because he "hates gay people." (*Id.*, ¶ 78.) He further asserts that Grenier violated his rights when she failed to move him off F-unit despite knowing that he was being extorted. (*Id.*, ¶ 79.) Additionally he alleges that Meisner, Cromwell, McHugh, and Congdon, who either as wardens or security directors, violated his rights for failing to properly train Bolduan, which resulted in the violation of his rights. (*Id.*, ¶ 80.) Finally, he alleges that Mastricola and Beier violated his rights

7

by not suspending Bolduan after learning about her actions through his inmate complaints. (*Id.*, ¶ 81.)

*Analysis*

Pfister alleges that defendant Bolduan violated his Eighth Amendment rights in two respects. First, when she "outed" him in the dayroom on May 14, 2022, and second when in July 2022, she encouraged other prisoners to assault him because he was gay. "[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster,* 803 F.3d 356, 358 (7th Cir. 2015). However, the Seventh Circuit has held that where a prison official has made comments labeling a prisoner as gay and those comments caused psychological harm because it "increased the likelihood of sexual assaults on him by other inmates," a plaintiff states an Eighth Amendment claim. *Id.* Pfister sufficiently alleges that Bolduan's comments, both in May and in July, caused him substantial psychological harm because it exposed him to greater risk of sexual assault and harassment. Indeed, Pfister alleges her May comments actually resulted in Pollard sexually assaulting him. He also alleges that Bolduan's comments caused other inmates to harass him by tampering with his kiosk account. He may proceed on both Eighth Amendment claims against Bolduan.

Pfister also alleges a First Amendment retaliation claim against Bolduan for her July comments. To state a retaliation claim, a plaintiff must allege that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was

8

at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Pfister alleges that Bolduan encouraged other inmates to assault him after he filed a grievance against her. Filing grievances is a protected activity. *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). The psychological harm Pfister suffered is sufficient at this stage of the case to demonstrate a deprivation likely to deter filing grievances. Also, he states that filing the grievance is the main reason Bolduan made those threats. Pfister may proceed on a First Amendment retaliation claim against Bolduan as well.

Additionally, Pfister alleges a Fourteenth Amendment equal protection claim against Schroeder. "'To establish a prima facie case of discrimination under the equal protection clause, [a plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class.'" *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). At this stage, Pfister sufficiently alleges a Fourteenth Amendment equal protection claim. He states Schroeder knew he was gay, and sexuality is a protected class. He states that Schroeder moved him to a more dangerous housing unit based solely on his sexuality. Implied in Pfister's allegations is that straight prisoners did not experience the same treatment. Pfister may proceed on a Fourteenth Amendment equal protection claim against Schroeder.

Pfister may also proceed on an Eighth Amendment claim against Schroeder. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Here, Pfister alleges that Schroeder knew that moving Pfister to F-unit was a substantial risk to his safety and moved him in order to purposely expose him to that risk.

Pfister also alleges an Eighth Amendment claim against Grenier for failing to move him off F-unit even though she knew he was being extorted. A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). Here, Pfister does not allege that Grenier actually knew of a substantial risk of harm because he alleges that he told her he felt safe on F-unit. At most, he speculates she may have known he was being extorted because she denied his reimbursement request. This is insufficient to establish actual knowledge. He may not proceed on an Eighth Amendment claim against Grenier, and she is dismissed.

Pfister further alleges a failure-to-train claim under the Eighth Amendment against four defendants, Meisner, Cromwell, McHugh, and Congdon, all of whom served as Bolduan's supervisor either in their capacity as warden or security director. In the Eighth Amendment context, failure-to-train claims "may only be maintained against a municipality." *Sanville v. McCaughtry,* 266 F.3d 724, 739-740 (7th Cir. 2001). Pfister's claim may be construed as a supervisor liability claim; however he still may not proceed on that claim because supervisors can be held liable for constitutional violations caused by their employees only where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* Pfister has not alleged that Meisner, Cromwell, McHugh, and Congdon had any knowledge of Bolduan's actions on either May 14, 2022, or in July 2022. At most he alleges he made Cromwell aware of her actions through his inmate complaints, but this is insufficient to establish liability. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Meisner, Cromwell, McHugh, and Congdon are dismissed.

Pfister also alleges a claim against Mastricola and Beier for not suspending Bolduan pursuant to his inmate grievances. As stated above, to be held liable for

11

actions taken when handling grievances, a plaintiff must allege that the defendants participated in the underlying conduct. Pfister does not allege that Mastricola or Beier participated in the underlying conduct, so they are dismissed.

Finally, Pfister states a state law tort claim for intentional infliction of emotional distress. At this stage, because Pfister stated viable federal claims, the court will recognize supplemental jurisdiction for the state law tort claim. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

## CONCLUSION

**IT IS THEREFORE ORDERED** that that Unit Manager Grenier, Warden Meisner, Dan Cromwell, Security Director McHugh, Security Director Congdon, Captain Mastricola, and ICE Beier are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants C.O. Bolduan and Unit Manager Schroeder. It is **ORDERED** that, under the informal service agreement, the defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

12

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk of Courts
>517 E. Wisconsin Avenue, Room 362
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Pfister is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Pfister is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Pfister's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Pfister may find useful in prosecuting his case

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Dated in Milwaukee, Wisconsin this 25th day of October, 2022.

STEPHEN C. DRIES
United States Magistrate Judge