UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SETH M. PFISTER,

    Plaintiff,

 v.                                              Case No. 22-cv-876

APRIL BOLDUAN, *et al.*,

    Defendants.

## ORDER

Plaintiff Seth M. Pfister, who is incarcerated at Redgranite Correctional Institution (RGCI) and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Pfister was allowed to proceed on First, Eighth, and Fourteenth Amendment claims and related state law claims against the defendants. The defendants filed a motion for partial summary judgment on the grounds that Pfister failed to exhaust his administrative remedies. (ECF No. 15.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 8.) The motion is fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for partial summary judgment on exhaustion grounds.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

# EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Standard*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

Wisconsin's procedures for inmates exhausting administrative remedies are contained in Wis. Admin. Code Ch. DOC 310 (2018). "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin Code § DOC 310.01(1). The Inmate Complaint Review System (ICRS) is the main process an inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before

3

filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the Reviewing Authority. Wis. Admin. Code § DOC 310.10(12). The Reviewing Authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner (CCE). Wis.

Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The CCE then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Pfister's Claims*

At screening, the court allowed Pfister to proceed on several claims. He was allowed to proceed on an Eighth Amendment cruel and unusual punishment claim against defendant April Bolduan for two incidents: 1) when she "outed" him in the dayroom on May 14, 2022; and 2) in July 2022 when she encouraged other prisoners to assault him because Pfister was gay. (ECF No. 4 at 8.) Pfister was also allowed to proceed on a First Amendment retaliation claim against Bolduan for her July 2022 comments because he alleged she made them in retaliation for Pfister filing inmate grievances against her. (*Id.* at 9.) Additionally, the court took supplemental jurisdiction for Pfister's state law intentional infliction of emotional distress claim stemming from the May 2022 incident. (*Id.* at 12.) Pfister was further allowed to

5

proceed on a Fourteenth Amendment equal protection claim and an Eighth Amendment cruel and unusual punishment claim against Zachary Schroeder for moving Pfister to a more dangerous housing unit because of his sexuality and knowing it posed a risk to him. (*Id.* at 9.)

The defendants are moving for summary judgment on exhaustion grounds on all claims except the Eighth Amendment claim against Bolduan for the May incident and the related state law claim.

*Pfister's Attempts to Exhaust His Administrative Remedies*

Pfister's efforts to exhaust his administrative remedies are largely undisputed. Pfister's prison records show that since being incarcerated at RGCI through August 2022, when he filed this suit, he filed four inmate complaints, but only one is relevant to this case—RGCI-2022-8087. (ECF No. 17, ¶ 3.) In RGCI-2022-8087, Pfister complained about Bolduan's actions on May 14, 2022. (*Id.*, ¶ 4.) The ICE recommended dismissal of the inmate complaint because there was a simultaneous investigation being conducted by supervisory staff. (*Id.*, ¶ 5.) Pfister appealed the dismissal, and the CCE recommended dismissal of the appeal. (*Id.*, ¶¶ 6-7.) The OOS accepted the CCE's dismissal of the appeal and dismissed it. (*Id.*, ¶ 8.)

It is undisputed that Pfister did not submit any inmate complaints regarding the July 2022 incident involving Bolduan's comments or regarding Schroeder's decision to move him into another housing unit. (ECF No. 23, ¶¶ 10-12.) However, Pfister states that he did not file any grievances related to the incidents with Bolduan "because of his fear that C.O. Bolduan would further retaliate by having other

6

inmates beat him 'back straight'". (ECF No. 25, ¶ 1.) Other than his declaration where he swears this is true, Pfister offers no evidence supporting his fear of retaliation. Regarding his claims against Schroeder, Pfister concedes that he did not exhaust his administrative remedies. (ECF No. 22 at 1.)

*Analysis*

Because Pfister concedes that he failed to exhaust his administrative remedies against Schroeder, the court will grant summary judgment in Schroeder's favor on the claims against him. Because there are no remaining claims against Schroeder, he is dismissed.

Regarding Bolduan, Pfister essentially is arguing that he did not exhaust the claims at issue because his administrative remedies were unavailable. A prisoner can overcome his failure to exhaust his administrative remedies where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A prisoner can show that a grievance process was unavailable when "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

Here, Pfister asserts that fear of Bolduan retaliating against him prevented him from further using the grievance process. Threats by prison officials can render the administrative process unavailable. *Ebmeyer v. Brock*, 11 F.4th 537, 543 (7th Cir.

7

2021) (citing *Kaba v. Stepp,* 458 F.3d 678, 680, 686 (7th Cir. 2006). However, "[w]hen an inmate claims that the grievance process is unavailable because he fears reprisal, he must demonstrate that a person of 'ordinary firmness' would have been deterred from filing a grievance in the circumstances alleged." *Id.* (citing *Schultz v. Pugh*, 728 F.3d 619, 621 (7th Cir. 2013). The Seventh Circuit Court of Appeals notes this is an objective standard. *Id.*

In *Ebmeyer*, the court determined that even though the plaintiff believed that he'd be subjected to further physical abuse from the officer who beat him up for verbally complaining previously, this belief was insufficient to establish that the grievance process was unavailable to him. *Id.* This is because the "prison procedures did not require [the plaintiff] to take up his complaint with his abuser, as he clearly knew." *Id.* The court also noted that the plaintiff had "a clear route around" his abuser, which the grievance process provided, and the plaintiff knew the proper procedure. *Id.* The court also determined that "[n]o one told him he could not file a grievance or denied him the proper forms. No one threatened to harm him if he filed a grievance."

Like the plaintiff in *Ebmeyer*, Pfister presents evidence only of his belief that he would be retaliated against by Bolduan if he filed another grievance. Also like the plaintiff in *Ebmeyer*, the process available to Pfister provided him a way to complain about Bolduan without having to go through her; Pfister clearly knew the proper procedure because he successfully filed grievances before; and Pfister presents no evidence that he was told he could not file a grievance or that he was denied the

8

proper forms. And, if the exhaustion requirement could be circumvented merely by a generic and subjective fear of retaliation, the requirement would soon become meaningless. In short, Pfister did not provide sufficient evidence to convince a factfinder to accept his version of the events. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). As such, the court grants the defendants' motion for partial summary judgment and dismisses all but the Eighth Amendment claim concerning the May 2022 incident and the related state law claim.

## CONCLUSION

For the reasons stated above, Pfister failed to exhaust his administrative remedies for all claims except the Eighth Amendment claim concerning the May 2022 incident and the related state law claim against Bolduan. Thus, all claims except those claims are dismissed. Because there are no remaining claims against Schroeder, he is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No. 15) is **GRANTED**. All claims except the Eighth he Eighth Amendment claim concerning the May 2022 incident and the related state law claim against Bolduan are **DISMISSED**.

9

**IT IS FURTHER ORDERED** that defendant Zachary Schroeder is **DISMISSED.**

The court will issue an amended scheduling order at a later date.

.

Dated in Milwaukee, Wisconsin this 21st day of August, 2023.

*Stephen C. Dries*
STEPHEN DRIES
United States Magistrate Judge